**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHERYL GROSHKO, BRANDON SANTEE, DAVID WEIKEL, JEFFREY MOYER, and ERIC BROWN,<br>Plaintiffs,<br><br>v.<br><br>LEHIGH VALLEY HEALTH NETWORK INC. t/a LEHIGH VALLEY HEALTH NETWORK, a registered fictious name and LEHIGH VALLEY HOSPITAL-SCHUYLKILL,<br>Defendants. | Civil Action No.: 3:26-cv-01962-JFS<br>(Judge Saporito)<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS


**I. PROCEDURAL HISTORY** .......... 1

**II. FACTUAL ALLEGATIONS** .......... 1

- **A. Allegations Common to All Plaintiffs** .......... 2
- **B. Mr. Moyer's FLSA Claim (Count IV)** .......... 3
- **C. Mr. Moyer's WPCL Claim (Count IX)** .......... 5

**III. QUESTION PRESENTED** .......... 7

- **A. WHETHER MR. MOYER'S CLAIMS (IV & IX) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM?** .......... 7

**IV. ARGUMENT** .......... 7

- **I. Legal Standard** .......... 7
- **II. Mr. Moyer Fails to State a Claim Under the Fair Labor Standards Act.** .......... 9
  - **A. Mr. Moyer Does Not Sufficiently Allege That His Meal Periods Were Compensable Work.** .......... 10
- **III. Mr. Moyer Fails to State a Claim Under the WPCL or PMWA** .......... 15

**V. CONCLUSION** .......... 18

# TABLE OF CITATIONS

## CASES

*Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir. 1992) .................................. 11

*Armour & Co. v. Wantock*, 323 U.S. 126 (1944) .................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 8, 9

*Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015) ........... 9, 10, 11, 12, 13, 15

*Bansept v. G &M Automotive*, 434 F.Supp. 3d 253 (E.D. Pa. 2020) ....................... 17

*Beasley v. Hillcrest Med. Ctr.*, 78 Fed. App'x 67 (10th Cir. 2003) ......................... 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 7, 8

*Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875 (Pa. Super. Ct. 2011), aff'd, 106 A.3d 656 (Pa. 2014) ........................................................................................ 16

*Davis v. Abington Mem'l Hosp.*, 765 F.3d 236 (3d Cir. 2014) ......... 9, 10, 14, 15, 17

*Davis v. Food Lion*, 792 F.2d 1274 (4th Cir. 1986) .............................................. 10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ...................................... 8

*Haviland v. Catholic Health Initiatives-Iowa Corp.*, 729 F. Supp. 2d 1038 (S.D. Iowa 2010) ........................................................................................ 14

*Hill v. United States*, 751 F.2d 810 (6th Cir. 1984) ............................................... 12

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ..................................................................................................... 10

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011) ..................................................... 9

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013) ..................................................................................................... 10

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................................. 7

*Rosario v. First Student Management, LLC*, 2016 WL 4367019 (E.D. Pa. Aug. 16, 2016) ........................................................................................... 16

*Ruffin v. MotorCity Casino*, 775 F.3d 807 (6th Cir. 2015) ............ 11, 12, 13, 14, 15

*Scungio Borst & Assocs. v. 410 Shurs Lane Dev., LLC*, 106 A.3d 103 (Pa. Super. Ct. 2014) ........................................................................................... 16

*Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. Ct. 2005) ........ 16

*Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944) ......... 11

*Yablonski v. Keevican Weiss Bauerle & Hirsch, LLC*, 197 A.3d 1234 (Pa. Super. Ct. 2018) ........ 16

**FEDERAL STATUTES**

29 U.S.C. § 201 et seq. ........ 1

29 U.S.C. § 206 ........ 3

29 U.S.C. § 207 ........ 3

**STATE STATUTES**

43 P.S. § 260.1 et seq. ........ 1

43 P.S. § 333.101 et seq. ........ 1

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ........ 7, 10

**FEDERAL REGULATIONS**

29 C.F.R. § 785.19(a) ........ 12

29 C.F.R. § 785.19(b) ........ 13

## I. PROCEDURAL HISTORY

Plaintiffs, Cheryl Groshko, Brandon Santee, David Weikel, Jeffrey Moyer ("Mr. Moyer"), and Eric Brown (collectively, "Plaintiffs"), initiated this action by filing a Complaint on July 14, 2026. (ECF 1). On September 15, 2026, Plaintiffs filed an Amended Complaint against Defendants, Lehigh Valley Health Network, Inc. t/a Lehigh Valley Health Network and Lehigh Valley Hospital–Schuylkill (collectively, "LVHN"). (ECF 9). The Amended Complaint asserts claims under three statutes: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Counts I–V); the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 et seq. (Counts VI–X); and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 et seq. (Count IX).

Mr. Moyer's individual claims are asserted in Count IV (FLSA) and Count IX (WPCL). LVHN now timely files the instant Partial Motion to Dismiss seeking dismissal of Counts IV and IX and Count XI as to Mr. Moyer.

## II. FACTUAL ALLEGATIONS

Plaintiffs are current and former Security Officers at LVHN's Schuylkill campuses on East Norwegian Street and South Jackson Street in Pottsville, Pennsylvania. Am. Compl. at ¶¶ 2–6. Mr. Moyer is the only former employee among the five Plaintiffs, and he alleges that he worked at both campuses. *Id.* at ¶ 5. The

Amended Complaint does not allege when Mr. Moyer's employment began or ended, his hourly rate of pay, or his regular shift or weekly schedule. *See generally id.*

**A. Allegations Common to All Plaintiffs**

Plaintiffs allege that LVHN's hourly employees reported their hours electronically and were allotted a 30-minute lunch break every shift. *Id.* at ¶¶ 19, 20. Employees were required to affirm electronically whether they took a 30-minute uninterrupted lunch. *Id.* at ¶ 22. According to Plaintiffs, two people told them they could not leave the building during their lunch break and were expected to answer work-related phone calls: their supervisor, Joseph Hannon, and the Director of Security, John T. Brobst. *Id.* at ¶ 23. Plaintiffs also allege they were required to carry their work-issued cell phones and radios. *Id.* They also allege that at times their selection of "no lunch" was changed after they submitted it, without citing any actual examples. *Id.* at ¶¶ 24, 25.

Plaintiffs allege that they "never took an uninterrupted lunch, as even when they were able to eat lunch, they were required to carry their work-issued cell phones and radios, resulting in 2 to 2 ½ unpaid hours per week." *Id.* at ¶ 26. Plaintiffs acknowledge, however, that "[t]he precise number of unpaid lunches for each employee can only be determined after obtaining the Defendant's payroll records." *Id.*

Plaintiffs further allege that their clock-in and clock-out times were changed to the scheduled start and end of their shifts when they worked past that time. *Id.* at ¶ 28, 30. Plaintiffs allege that they "do not know how many times this has occurred, as they only recently became aware of the alterations and began monitoring them." *Id.* at ¶ 28. The only specific instance identified in the common allegations involves Plaintiff Groshko's timecard for June 13, 2026. *Id.* at ¶ 30.

**B. Mr. Moyer's FLSA Claim (Count IV)**

In Count IV, Mr. Moyer alleges that LVHN violated 29 U.S.C. §§ 206 and 207. *Id.* at ¶ 83. He alleges that LVHN failed to pay him for all hours worked and failed to pay him overtime for work beyond forty hours in a workweek. *Id.* Mr. Moyer alleges that he "worked and was compensated for overtime in a given week on multiple occasions when he also was not compensated for lunches he worked through." *Id.* at ¶ 84. As his sole vague example, Mr. Moyer alleges that he "worked many weeks where he was paid in excess of 40 hours, while working through approximately 95% of his lunches while not being paid for those lunches." *Id.* at ¶ 85. He further alleges that "[d]uring most of Moyer's employment with defendants he was the only security person on duty and could not take lunch." *Id.* at ¶ 86.

Mr. Moyer also alleges that he was called upon to clock in early and to stay beyond his quit time. *Id.* at ¶¶ 87, 88. He alleges that management adjusted his clock-in and clock-out times to match his scheduled start and quit times. *Id.* These

allegations are in terms substantially identical to those of his co-Plaintiffs. *Compare id.* at ¶¶ 87, 88, *with id.* at ¶¶ 39, 40, 54, 55, 70, 71, 103, 104. He does not allege the date of any such adjustment or the amount of time involved. *See id.* at ¶¶ 87, 88. Instead, Mr. Moyer alleges that "[w]ithout payroll records [he] is unable to calculate each incident when he was not compensated for overtime hours." *Id.* at ¶ 89. The remainder of Count IV consists of allegations of willfulness, knowledge, and recordkeeping. These allegations are repeated verbatim in the FLSA count of every other Plaintiff. *Compare id.* at ¶¶ 90–97, *with id.* at ¶¶ 41–48, 57–64, 73–80, 106–113.

Notably, each of Mr. Moyer's co-Plaintiffs identifies at least one specific pay period in which he or she allegedly worked overtime and was not compensated for meal periods. *See id.* at ¶ 38 (Groshko: August 9 through August 22, 2026); *id.* at ¶ 53 (Santee: July 26 through August 8, 2026); *id.* at ¶ 69 (Weikel: December 22, 2024 through January 4, 2025); *id.* at ¶ 102 (Brown: June 28 through July 11, 2026, and August 9 through August 22, 2026). Mr. Moyer does not. Count IV does not identify a single workweek or pay period in which Mr. Moyer worked more than forty hours. Nor does it state the number of hours he worked in any workweek or the number of meal periods he worked through in any workweek. *See id.* at ¶¶ 81–97.

### C. Mr. Moyer's WPCL Claim (Count IX)

In Count IX, Mr. Moyer asserts a claim under the WPCL. *Id.* at ¶¶ 150–162. He alleges that he "was contractually entitled to be paid for all the hours he worked, as he was promised as an hourly employee to be paid an agreed upon rate for all time spent performing work duties, including, but not limited to, answering and responding to calls." *Id.* at ¶ 152. The same allegation appears, nearly word for word, in the WPCL count of every other Plaintiff. *Compare id.*, *with id.* at ¶¶ 116, 129, 142, 165. The Amended Complaint does not identify any written or oral contract or its terms. It does not say who made the alleged promise, when it was made, or what the "agreed upon rate" was. *See id.*

Mr. Moyer alleges that he "worked through lunches for his entire tenure with Defendants" and "never took lunch." *Id.* at ¶ 155. That allegation is inconsistent with Count IV. There, Mr. Moyer alleges that he worked through "approximately 95%" of his lunches and could not take lunch "[d]uring most of" his employment. *Id.* at ¶¶ 85, 86.

Mr. Moyer further alleges three categories of specific instances. *Id.* at ¶¶ 156–158. He alleges that he is aware of: "at least 14 instances when his mandatory over-time was removed"; "at least 20 instances when his clock-in and/or clock-out time was manually changed without his consent"; and "at least one instance when he was selected for a mandatory random drug screening for which he was required to stay

late and was not paid for the additional time." *Id.* He does not allege when any of these instances occurred or the workweek in which any occurred. He also does not allege the amount of time involved or the number of hours he worked in that workweek. *See id.* He acknowledges that he "did not become aware of his supervisor changing his hours on his timecard until late in his tenure." *Id.* at ¶ 157. These allegations appear only in Count IX. Count IV incorporates only paragraphs 1 through 80. *Id.* at ¶ 81.

Mr. Moyer also alleges that "[t]he payroll system and/or management adjustments caused [him] not to be paid for incentive hours." *Id.* at ¶ 159. The Amended Complaint does not define "incentive hours." It does not allege that LVHN agreed to pay them or the rate at which they were to be paid. The term appears nowhere else in the pleading except the prayer for relief. *See id.* at ¶ 159; *id.* at Ad Damnum Clause ¶ (h). Finally, Mr. Moyer alleges that it is "impossible" for him to determine his losses without his payroll records. *Id.* at ¶ 160. He alleges that he is due payment for lunches and overtime that "have not been paid in 30 or more days." *Id.* at ¶¶ 161, 162.

In sum, the Amended Complaint does not allege when Mr. Moyer worked for LVHN, what he was paid, or what schedule he worked. It also does not allege how many hours he worked in any given week. *See id.* It does not identify a single workweek in which Mr. Moyer worked more than forty hours and was not

compensated for all hours worked in excess of forty. Nor does it allege the terms of any contract obligating LVHN to pay the wages he claims. *See id.* at ¶¶ 81–97, 150–162.

## III. QUESTION PRESENTED

### A. WHETHER MR. MOYER'S CLAIMS (IV & IX) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM?

**Suggested Answer:** **Yes.**

## IV. ARGUMENT

### I. Legal Standard

In deciding whether to grant or deny a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (noting that a plaintiff's factual allegations must be enough to raise the right to relief above the speculative level).

Further, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief 'that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The *Iqbal* Court went on to specifically highlight the two principles which underpinned its decision in *Twombly*. First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific analysis, drawing on the court's judicial experience and common sense. *Iqbal*, 556 U.S. at 678; *Fowler*, 578 F.3d at 211. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not shown - that the complainant is entitled to relief. *Iqbal*, 556 U.S. at 678.

This means that a court's inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the

complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## II. <u>**Mr. Moyer Fails to State a Claim Under the Fair Labor Standards Act.**</u>

In Count IV of the Amended Complaint, Mr. Moyer asserts that LVHN violated the FLSA by failing to compensate him for work allegedly performed during meal periods and before and after his scheduled shifts. Am. Compl. at ¶¶ 83–88. Count IV should be dismissed because Mr. Moyer fails to allege facts supporting a reasonable inference that the disputed time was compensable work for which overtime was owed. *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241–43 (3d Cir. 2014). He does not allege facts showing that his meal periods were spent primarily for LVHN's benefit, and he does not adequately connect the alleged adjustments to his clock-in and clock-out times to any workweek exceeding forty hours. *See Babcock v. Butler County*, 806 F.3d 153, 156–58 (3d Cir. 2015); *Davis*, 765 F.3d at 242–43. The bald assertion that he 'worked through lunch' without facts showing that he did is a conclusion this Court need not accept. Am. Compl. at ¶¶ 84, 85; *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563; see *Babcock*, 806 F.3d at 156, 158 (applying the predominant benefit test to determine whether the meal periods alleged were compensable work, "even accepting all of Plaintiffs' allegations as true").

To recover overtime compensation under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis*, 765 F.3d at 241 (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)). At the pleading stage, "a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." *Id.* at 241–42 (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)) (emphases omitted). Plaintiffs "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* at 243 (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). Where the uncompensated time is a meal period, the plaintiff must also allege facts showing that the period was compensable work at all. *See Babcock*, 806 F.3d at 155–56, 158.

### A. **<u>Mr. Moyer Does Not Sufficiently Allege That His Meal Periods Were Compensable Work.</u>**

The Amended Complaint does not allege facts supporting a reasonable inference that Mr. Moyer's unpaid meal periods were compensable work. *See Babcock*, 806 F.3d at 155, 158 (affirming Rule 12(b)(6) dismissal where corrections officers could not leave the prison without permission and had to remain in uniform, near emergency response equipment, and on call during meal periods). In the Third

Circuit, the compensability of a meal period is governed by the predominant benefit test, which asks "whether the officer is primarily engaged in work-related duties during meal periods." *Id.* at 156 (quoting *Armitage v. City of Emporia*, 982 F.2d 430, 432 (10th Cir. 1992)). The inquiry looks to the totality of the circumstances to determine "to whom the benefit of the meal period inures." *Id.* at 157. The test derives from the Supreme Court's instruction that "[w]hether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *see Babcock*, 806 F.3d at 157; *see also Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (describing work as exertion "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business").

The Sixth Circuit in applying the same test considers whether the employee performed substantial duties during the meal period, whether the employer's business regularly interrupted it, and whether the employee could leave the premises. *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811, 813 (6th Cir. 2015); *see Babcock*, 806 F.3d at 157. A requirement that the employee remain available does not answer those questions. "[M]onitoring a radio, and being available to respond if called, is a *de minimis* activity, not a substantial job duty." *Ruffin*, 775 F.3d at 812. Rather, "[i]t is only when an employee is required to give up a substantial measure of his time

and effort that compensable working time is involved." *Id.* (quoting *Hill v. United States*, 751 F.2d 810, 815 (6th Cir. 1984)). As to interruptions, "[t]he question is not whether [the employees'] meals were interrupted ... but whether the degree of interruption caused them to spend their meal periods primarily for [the employer's] benefit." *Id.* at 813 (quoting *Beasley v. Hillcrest Med. Ctr.*, 78 Fed. App'x 67, 69 (10th Cir. 2003)).

The test is not, as the Amended Complaint assumes, whether the employee was "completely relieved from duty." Plaintiffs' allegations track the Department of Labor's interpretive regulation, under which an employee "must be completely relieved from duty for the purposes of eating regular meals" and "is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a). Plaintiffs allege that employees "were not relieved from duty," Am. Compl. at ¶ 25, and that they "never took an uninterrupted lunch, as even when they were able to eat lunch, they were required to carry their work-issued cell phones, and radios." *Id.* at ¶ 26; *see also id.* at ¶¶ 22, 24. On that theory, carrying a radio converts every meal period into working time. *See Id.* Mr. Moyer must allege facts showing that he was primarily engaged in work-related duties during his meal periods for the benefit of his employer, alleging that he was not completely relieved from duty is not enough. *See Babcock*, 806 F.3d at 155, 158.

Mr. Moyer's allegations take two forms, and neither suffices. First, he relies on restrictions that applied to all Plaintiffs during meal periods: they were told they "may not leave the building," were "expected to answer work-related phone calls," and were "required to carry their work-issued cell phone, and radio, and respond to calls." Am. Compl. at ¶ 23. These allegations describe an obligation to remain available. They do not allege that Mr. Moyer received or responded to a call during any meal period. In *Babcock*, the officers could not leave the prison without permission, were required to remain in uniform and in close proximity to emergency response equipment, and had to remain on call to respond to emergencies. 806 F.3d at 155. The Third Circuit nonetheless held that, "even accepting all of Plaintiffs' allegations as true," the officers were not "primarily engaged in work-related duties" and failed to state a claim. *Id.* at 158.

Mr. Moyer alleges restrictions of the same kind: remaining on the premises and remaining available to respond. He does not allege that he was required to eat at a post, limited in where within the building he could go, or restricted in how he spent the period. A requirement to remain on the premises does not by itself make a meal period compensable. *See* 29 C.F.R. § 785.19(b); *Ruffin*, 775 F.3d at 814. Nor does a requirement to carry a radio. The Amended Complaint acknowledges that Plaintiffs were at times "able to eat lunch" and treat those meals as interrupted because Plaintiffs carried phones and radios while eating. Am. Compl. at ¶ 26. But

"[n]umerous courts ... have declined to find that an employer's requirement that an employee carry a radio and respond if necessary converts the meal time to work time." *Ruffin*, 775 F.3d at 812 (quoting *Haviland v. Catholic Health Initiatives-Iowa Corp.*, 729 F. Supp. 2d 1038, 1061 (S.D. Iowa 2010)). Accepted as true, these allegations establish that Mr. Moyer was required to remain in the building and be reachable. They do not support a  plausible inference that he was primarily engaged in work-related duties during the thirty minutes.

Second, Mr. Moyer alleges that he was "working through approximately 95% of his lunches" and that "[d]uring most of Moyer's employment with defendants he was the only security person on duty and could not take lunch." Am. Compl. at ¶¶ 85, 86. The conclusion that he worked does not identify with specificity the duty he performed, how often he was called upon, or how long any interruption lasted. *See Davis*, 765 F.3d at 241, 243. The second alleges a staffing arrangement followed by a conclusion. Being the only officer on duty is not the same as being engaged in work, and the Amended Complaint pleads only the former. Count IV does not allege that, as the only officer on duty, Mr. Moyer answered calls, was dispatched to incidents, or performed any other security function during his meal periods. It therefore alleges no facts from which the Court could infer that he gave up "a substantial measure of his time and effort" during those periods, or that "the degree

of interruption" caused him to spend them primarily for LVHN's benefit. *Ruffin*, 775 F.3d at 812, 813.

Because the Amended Complaint alleges restrictions and conclusions, but no facts showing that Mr. Moyer was primarily engaged in work-related duties during uncompensated meal periods, it does not plausibly allege that those periods were compensable work. The contrast with Mr. Moyer's co-Plaintiffs is instructive. Mr. Moyer alleges only that he "worked many weeks where he was paid in excess of 40 hours, while working through approximately 95% of his lunches." Id. at ¶ 85. He identifies no pay period, no number of overtime hours, and no number of meal periods. These allegations are not sufficient on their face pursuant to *Babcock,* but also fail to establish facts that support any uncompensated hours were not clearly gap time which is not covered under the FLSA. *Davis,* 765 F.3d at 244.

**III. Mr. Moyer Fails to State a Claim Under the WPCL or PMWA**

In Counts IX and XI of the Amended Complaint, Mr. Moyer brings causes of action for alleged violations of the Pennsylvania WPCL and PMWA. Mr. Moyer's WPCL claim must be dismissed as he has failed to state a claim upon which relief can be granted.

Mr. Moyer's WPCL claim is based on the alleged nonpayment of wages for meal periods and for time worked before and after his scheduled shifts, and on the alleged nonpayment of overtime and "incentive hours." Am. Compl. at ¶¶ 153–159,

161, 162. The "WPCL does not create an employee's substantive right to compensation; rather it only establishes a statutory vehicle to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement." *Scungio Borst & Assocs. v. 410 Shurs Lane Dev., LLC*, 106 A.3d 103, 109 (Pa. Super. Ct. 2014) (*en banc*). "Whether specific wages are due is determined by the terms of the contract." *Yablonski v. Keevican Weiss Bauerle & Hirsch, LLC*, 197 A.3d 1234, 1238 (Pa. Super. Ct. 2018). Where an employee does not work under a written employment contract or collective bargaining agreement, the employee will have to establish the formation of an implied oral contract to recover under the WPCL. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014).

Mr. Moyer fails to allege facts showing a contractual obligation for the payment of the wages he seeks. *See Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 718 (Pa. Super. Ct. 2005) (noting in order "to present a claim under the WPCL, [plaintiff] had to plead that he was contractually entitled to compensation and that [defendant] failed to pay the required compensation."). Count IX alleges only that Mr. Moyer was an hourly employee, and "the mere existence of an employer-employee relationship is not sufficient to establish a contractual right to recovery under the WPCL." *Rosario v. First Student Management, LLC*, 2016 WL 4367019, at *8 (E.D. Pa. Aug. 16, 2016). As cited above Mr. Moyer has failed to

even state facts that show his alleged hours were compensable time under the FLSA and cites to no agreement or contract that would otherwise entitle him to relief under the WPCL.

Similarly, the PMWA has regularly been analyzed under the same framework as the FLSA for overtime and minimum wage. *Bansept v. G&M Automotive*, 434 F.Supp. 3d 253, 258 (E.D. Pa. 2020). Mr. Moyer fails to allege that he worked forty (40) hours a week, that his lunches were compensable at all or that losing the thirty (30) minutes of pay for a lunch hour would drive his salary below minimum wage. In order to state a plausible claim for FLSA or PMWA overtime, a plaintiff must allege forty (40) hours of work in a given workweek as well as some uncompensated time in excess of that. *Id. Citing Davis supra.* Once discounting Mr. Moyer's conclusionary statements in the Amended Complaint, he has clearly failed to meet this minimal burden for both the FLSA and PMWA claims which must be dismissed. Accordingly, Counts IV, IX and Mr. Moyer's claims under Count XI of the Amended Complaint must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendants, Lehigh Valley Health Network, Inc. t/a Lehigh Valley Health Network and Lehigh Valley Hospital–Schuylkill, respectfully requests that this Honorable Court grant its motion and dismiss the claims of Jeffrey Moyer's contained in the Amended Complaint.

Respectfully submitted,

**HOFFMAN & HLAVAC**

By: */s/ Steven E. Hoffman*
Steven E. Hoffman, Esquire
Attorney I.D. No. PA 63911
Jared J. Hanna, Esquire
Attorney I.D. No. PA 313769
1605 N. Cedar Crest Blvd., Suite 509
Allentown, PA 18104
Ph # 484-408-6001 Fax # 484-408-6018
Email: shoffman@hhe-law.com
Email: jhanna@hhe-law.com
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHERYL GROSHKO, BRANDON SANTEE, DAVID WEIKEL, JEFFREY MOYER, and ERIC BROWN, Plaintiffs, | : | Civil Action No.: 3:26-cv-01962-JFS (Judge Saporito) |
| v. | : | |
| LEHIGH VALLEY HEALTH NETWORK INC. t/a LEHIGH VALLEY HEALTH NETWORK, a registered fictious name and LEHIGH VALLEY HOSPITAL-SCHUYLKILL, Defendants. | : | JURY TRIAL DEMANDED |

**CERTIFICATE PURSUANT TO LOCAL RULE 7.08(b)**

Pursuant to Local Rule 7.08, and subject to Fed. R. Civ. P. 11 as set forth therein, the undersigned certifies that the attached Brief in Support of Defendants' Motion to Dismiss exceeds the fifteen (15) page limit, but less than 5,000 words. Specifically, the undersigned has relied on the Microsoft Word Count and the Brief is 4,894 words (4,278 excluding the caption and tables).

**HOFFMAN & HLAVAC**

By: *__/s/ Jared J. Hanna__*
Steven E. Hoffman, Esquire
Attorney I.D. No. PA 63911
Jared J. Hanna, Esquire
Attorney I.D. No. PA 313769

1605 N. Cedar Crest Blvd., Suite 509
Allentown, PA 18104
Ph # 484-408-6001 Fax # 484-408-6018
Email: shoffman@hhe-law.com
Email: jhanna@hhe-law.com
*Attorneys for Defendants*